IN THE UNITED STATES BANKRUPTCY COURT FOR THE
EASTERN DISTRICT OF TENNESSEE

In re

                              Case No. 3:15-bk-30632-SHB

JASON AND AMY PHILLIPS

      Debtors

# M E M O R A N D U M

**APPEARANCES:**    BOND, BOTES & LAWSON, P.C.
                                Cynthia T. Lawson, Esq.
                                6704 Watermour Way
                                Knoxville, Tennessee  37901
                                Attorneys for the Debtors

                                O'SHAUGHNESSY & CARTER, PLLC
                                W. B. Mitchell Carter, Jr., Esq.
                                Suite 1000, James Building
                                735 Broad Street
                                Chattanooga, Tennessee  37402
                                Attorneys for Solutions Finance, LLC

**SUZANNE H. BAUKNIGHT**
**UNITED STATES BANKRUPTCY JUDGE**

## I. INTRODUCTION

The court has before it Debtors' Motion for Contempt Against Solutions Finance, LLC for Violating Automatic Stay (Motion) filed May 11, 2015. Debtors seek actual and punitive damages and attorneys' fees against Solutions Finance, LLC (Solutions) for a willful violation of the automatic stay of 11 U.S.C. § 362(a) for Solutions's post-petition contacts with Debtors and Debtor Jason Phillips's relatives to demand payment on a pre-petition debt.

The matter was submitted on testimony, exhibits, stipulations filed as undisputed facts, the record in this case, and arguments and briefs of counsel. Based on the record, the court finds it unnecessary to determine whether Solutions willfully violated the automatic stay because Debtors failed to present proof of actual damages resulting from the stay violation, other than damages associated with their prosecution of that violation, and this court finds that such damages are not recoverable through this proceeding because Debtors failed to mitigate.

## I. FINDINGS OF FACT

Debtors filed this Chapter 7 case on March 3, 2015, scheduling "Salution Finance" as an unsecured creditor with an address of 804 Highway 321 North, Suite 200, Lenoir City, TN 37771, which is the correct mailing address for Solutions. On March 6, 2015, the Bankruptcy Noticing Center (BNC) mailed to "Salution Finance" at Solutions's address the court's Official Form 9A, Notice of Chapter 7 Bankruptcy Case, Meeting of Creditors, & Deadlines (Notice).

The debt owed to Solutions resulted from an unsecured loan to Debtor Jason Phillips in 2014. Mr. Phillips acknowledged that as of the date of the bankruptcy petition, he had made only one payment to Solutions on the loan such that it was delinquent.

Notwithstanding that Solutions does not dispute the mailing of the Notice, each of Solutions's three employees who work at the Lenoir City location testified that they had no

1

memory of receiving it. According to their testimony, had the Notice been received, at least one of the employees would have followed Solutions's standard operating procedures and noted the bankruptcy case in Mr. Phillips's computerized loan history so that communication with him would have stopped.

Debtors' Motion complains of five contacts by Solutions that are alleged to have violated the automatic stay: three phone calls to Mr. Phillips on April 6, 2015; a collection letter to Mr. Phillips dated April 13, 2015; and a phone call to Mr. Phillips's sister on April 24, 2015. The loan history on Mr. Phillips's debt submitted by Solutions at the hearing reflects only one call on April 6, no letter on April 13 (notwithstanding that Solutions stipulated that it caused a letter dated April 13, 2015, to be sent to Mr. Phillips), and a call to "Vickie" (Mr. Phillips's sister who testified at the hearing) on April 23, not April 24. Regardless of the discrepancies between Mr. Phillips's recitation and Solutions's loan history, the record submitted by Solutions actually reflects a total of 22 collection contacts with various individuals from March 5, 2015, until May 19, 2015, when the account was flagged with "Chapter 7 BK."

Debtors filed the Motion on May 11, 2015, serving it on Solutions at the same Lenoir City address as well as to the registered agent. On May 19, 2015, Solutions's manager, Ruby Rousseau entered the "Chapter 7 BK" flag into the loan history. The loan history reflects no further collection communications on Mr. Phillips's account, and Mr. Phillips does not claim that Solutions made any additional contacts after the Motion was filed and served (the last contact having been a telephone call to Mr. Phillips's sister on May 9).

At no time before filing the Motion did Debtors or Debtors' counsel inform Solutions that Mr. Phillips had filed bankruptcy. On or about April 27, 2015, however, Solutions received a certified letter, return receipt requested, consisting of a blank sheet of paper with no return

2

address on the paper or the envelope. Upon receiving the mail, Ms. Rousseau caught up with the mailman to ask where the letter came from, and she was given a return address, which she "Googled" to discover that the mail was sent from Debtors' counsel's office. Ms. Rousseau then called Debtors' counsel's office to inform them about the blank page and to ask whether they had meant to send something to Solutions. Ms. Rousseau was told that someone would call her back, but counsel did not return the call or otherwise contact Solutions before filing the Motion. During oral argument, Debtors' counsel acknowledged that she intentionally sent the blank page by certified mail, addressed exactly as the Notice had been addressed, because she anticipated that Solutions would defend against the as-yet unfiled Motion based on the misspelling of Solutions's name in the address used for mailing the Notice.

Concerning damages, Mr. Phillips testified that he did not miss any work as a result of Solutions's conduct. Although Mr. Phillips testified that he had traveled to his attorney's office on three or four occasions to discuss Solutions's conduct and had traveled to court on the date of hearing, all of which resulted in mileage and gas expenses, as well as parking expenses for the hearing, he did not testify as to any amount of mileage incurred or any amount of gas or parking expense.

### III. LAW AND ANALYSIS

Section 362(a) of the Bankruptcy Code provides a broad stay of actions when an individual debtor files a bankruptcy case, including "any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title." 11 U.S.C. § 362(a)(6).

> An individual injured by a willful violation of the stay can recover actual damages. 11 U.S.C. § 362(k)(1). An individual seeking damages for a violation of the stay has the burden of establishing three elements by a preponderance of

3

>   the evidence: (1) the actions taken were in violation of the automatic stay; (2) the violation was willful; and (3) the violation caused actual damages. *Barclay v. Reimer & Lorber Co. LPA (In re Barclay )*, No. 05-8019, 2006 WL 238139, at *5 (B.A.P. 6th Cir. 2006) (table) (citing *In re Skeen*, 248 B.R. 312, 316 (Bankr. E.D. Tenn. 2000)).

*Collett v. Lee Oil Co. (In re Collett)*, Nos. 13-8033, 12-61190, 2014 WL 2111309, at *4 (B.A.P. 6th Cir. May 21, 2014).

Debtors assert that the actions of Solutions constitute a willful violation of the automatic stay because the Notice mailed by the BNC created a presumption that Solutions received the Notice such that Solutions is properly held accountable for knowledge of the content of the Notice. Debtors seek damages for Mr. Phillips's "embarrassment, frustration and emotional distress" and "actual damages as a result of [Solutions's] violation of the automatic stay." Citing to *In re Yoder*, 758 F.2d 1114, 1118 (6th Cir. 1985), Solutions responds that because its name was misspelled on the mailing matrix, the Notice was not properly addressed so that the presumption of receipt does not arise. As to damages, Solutions argues that even if the court finds that it had constructive notice of the bankruptcy case by virtue of the mailed Notice, Debtors have not proven any actual damages and did not comply with their duty to attempt to mitigate any damage.

Because the court finds that Debtors failed to carry their burden to prove actual damages caused by Solutions's stay violation and they did not attempt to mitigate any damage, the court need not reach the question of whether the automatic stay was willful and the related issue of whether the presumption of receipt of the Notice arises in this case. Moreover, because Debtors jumped straight to a motion for sanctions without first making any effort to mitigate damages by contacting Solutions, the court finds that Debtors may not recover any damages, including attorneys' fees and expenses for pursuing the Motion. The evidence leads the court to conclude

4

that had Debtors or their counsel exerted even minimal effort to mitigate damages, they could have prevented continued contact by Solutions or any need to file the instant Motion.

First, the damages evidence presented by Debtors was wholly insufficient to meet their burden of proof. Debtors bear the burden of demonstrating, "by at least a preponderance of the evidence, that the damages sought were actually suffered." *In re Pawlowicz*, 337 B.R. 640, 645-46 (Bankr. N.D. Ohio 2005). An award of damages "may not be based on 'mere speculation, guess, or conjecture.'" *In re Gault*, 136 B.R. 736, 739 (Bankr. E.D. Tenn. 1991) (citation omitted). Debtors' Motion states no amount for claimed damages, and Mr. Phillips testified only that he had incurred mileage and parking expense – his testimony did not include any amount of mileage or gas expense. While this court recognizes that "the law does not require impossibilities when it comes to proof of damages, . . . it does require whatever degree of certainty that the nature of the case admits." *Archer v. Macomb County Bank*, 853 F.2d 497, 499 (6th Cir. 1988) (citations, internal quotation marks, and brackets omitted). Thus, this court will not engage in its own investigation to determine a damages amount based on such scant evidence.[1]

Second, the court finds that the Motion could easily have been avoided had Debtors taken any action to mitigate their damages. Certainly, "[t]he automatic stay and the breathing room it affords from creditor collection activities play a vital and fundamental role in bankruptcy." *Grine v. Chambers (In re Grine)*, 439 B.R. 461, 470 (Bankr. N.D. Ohio 2010) (citing *Midlantic Nat'l Bank v. New Jersey Dep't of Envtl. Prot.*, 474 U.S. 494, 503 (1986)). Nevertheless:

---

[1] Mr. Phillips did not testify as to any damages from emotional distress, and it appears to the court, based on the evidence presented, that any such emotional distress could only have been "fleeting, inconsequential, and medically insignificant" and thus, "not compensable." *Crispell v. Landmark Bank (In re Crispell)*, 73 B.R. 375, 380 (Bankr. E.D. Mo. 1987), *quoted in Skeen*, 248 B.R. at 320.

5

>  *attorney's* fees and costs claimed as damages, whether pre-litigation or post-litigation, must have been proximately caused by and reasonably incurred as a result of the violation of the automatic stay. . . .  If litigation is unnecessary to afford a complete remedy to a debtor, then the fees for commencing and prosecuting an action will fail this standard.

*Id.* at 471.  The automatic stay "is intended to be a shield protecting debtors and their estates, and should not be used as a sword for their [or debtor's counsel's] enrichment." *Skeen*, 248 B.R. 312 at 321 (quoting *McHenry v. Key Bank (In re McHenry)*, 179 B.R. 165, 169 (B.A.P. 9th Cir. 1995)).

As explained by the district court in the Eastern District of Michigan, affirming the bankruptcy's court's rejection of debtors' claim for damages under circumstances remarkably similar to those here:  "Given the frequency in which debtors file motions for contempt and/or for damages under section 362([k]) for violations of automatic stays, debtors 'have an obligation to attempt to mitigate damages *prior* to *seeking court intervention*.'" *Schang v. Muller, Muller, Richmond, Harms & Myers, P.C. (In re Schang)*, No. 14-CV-14119, 2015 WL 3441178, at *3 (E.D. Mich. May 28, 2015) (emphasis in original) (citing *In re Oksentowicz*, 324 B.R. 628, 630 (Bankr. E.D. Mich. 2005 (collecting cases)).  Other courts have stated it this way:

>  Although the Bankruptcy Code does not require a debtor to warn his creditors of existing violations prior to moving for sanctions, the debtor is under a duty to exercise due diligence in protecting and pursuing his rights and in mitigating his damages with regard to such violations. *Mitchell Constr. Co. v. Smith (In re Smith)*, 180 B.R. 311, 320 (Bankr. N.D. Ga. 1995); *General Motors Acceptance Corp. v. Miller*, 10 B.R. 74, 76 (Bankr. S.D. Ohio 1981).  This duty includes "such cooperation as might reasonably and promptly mitigate [the debtor's] damages." *In re Esposito*, 154 B.R. 1011, 1015 (Bankr. N.D. Ga. 1993).

*Hutchings v. Ocwen Fed. Bank, FSB (In re Hutchings)*, 348 B.R. 847, 906 (N.D. Ala. 2006) (quoting *Clayton v. King (In re Clayton)*, 235 B.R. 801, 811-12 (Bankr. M.D.N.C. 1998)).  Simply, "[t]he automatic stay was not designed to be used as a kind of spring-loaded gun against

6

creditors who wander into traps baited by the debtor." *Clayton*, 235 B.R. at 807, *quoted in Hutchings*, 348 B.R. at 907; *Oksentowicz*, 324 B.R. at 630.

Here, neither of Debtors informed Solutions that they had filed bankruptcy when they were speaking with Solutions's representatives on the telephone on at least two occasions after filing the petition. Worse, Debtors' counsel's blank mailing to Solutions to set up proof of receipt of the Notice for purposes of the Motion could have served that same purpose *and* served also to mitigate Debtors' damages by simply including a courtesy letter asking Solutions to cease contact with Debtors because of the bankruptcy stay. Counsel's stunt was exacerbated when counsel did not return Solutions's call after Ms. Rousseau went to extra lengths to discover the identify of and make contact with the sender of the blank page.[2]

Finally, the court likewise denies Debtors' request to award punitive damages for Solutions's conduct. The Supreme Court has noted that "punitive damages are only appropriate when there is some sort of nefarious or otherwise malevolent conduct." *Memphis Cmty. Sch. Dist. v. Stachura*, 477 U.S. 299, 307 n.9 (1986), *quoted in In re Perviz*, 302 B.R. 357, 372 (Bankr. N.D. Ohio 2003). Nothing in this record establishes that Solutions's conduct qualifies for an award of punitive damages.

---

[2] The court is not declining to award damages for attorneys' fees and expenses because no other actual damages were proven. The facts before the court are distinguishable from the facts in *Grine*, in which the court awarded attorneys' fees even though no other amount was awarded as actual damages. In *Grine*, the court did not find a failure to mitigate and determined that counsel's intervention to send the creditor a demand letter, without which the stay violations would have continued, was both necessary and appropriate to stop the stay violations. *Grine,* 439 B.R. at 473. Here, had counsel communicated with Solutions about the stay violations, the motion for sanctions likely would have been unnecessary, or at least would have been presented to the court in a very different posture.

7

## IV.  CONCLUSION

For the foregoing reasons, Debtors' Motion for Contempt Against Solutions Finance, LLC for Violating Automatic Stay is denied.  An order consistent with this Memorandum shall be entered.

FILED:  July 13, 2015

>BY THE COURT
>
>*Suzanne H. Bauknight*
>
>SUZANNE H. BAUKNIGHT
>UNITED STATES BANKRUPTCY JUDGE